■ NEW YORK STATE WORKERS' COMPENSATION BOARD, as Administrator of the Workers' Compensation Law and Atten-

dant Regulations, and as Successor in Interest to the HEALTH-CARE INDUSTRY TRUST OF NEW YORK, et al., Appellant-Respondent, v SGRISK, LLC, et al., Respondents-Appellants. [983 NYS2d 642]—

McCarthy, J. Cross appeals from an order of the Supreme Court (Platkin, J.), entered March 13, 2013 in Albany County, which partially granted defendants' motions to dismiss the complaint.

Between 1999 and 2008, Compensation Risk Managers, LLC (hereinafter CRM) acted as the group administrator (*see* 12 NYCRR 317.2 [g]) for eight workers' compensation group self-insured trusts that were formed to provide workers' compensation coverage to employees of the trusts' members (*see* Workers' Compensation Law § 50 [3-a]; 12 NYCRR 317.2 [i]; 317.3). CRM contracted with defendant UHY, LLP for accounting services that included the preparation of annual audited financial statements that each trust was required to submit to plaintiff (*see* 12 NYCRR 317.19 [a] [2]). CRM contracted with defendant SGRisk, LLC for actuarial services that included the preparation of annual actuarial reports that the trusts were required to submit to plaintiff (*see* 12 NYCRR 317.19 [a] [3]). At different points between 2007 and January 2010, plaintiff deemed each of the trusts insolvent and assumed their administration (*see* 12 NYCRR 317.20). Plaintiff subsequently obtained independent forensic accountings of each trust and discovered that the trusts had deficits ranging from $4 million to $170 million.

Plaintiff commenced this action, as the governmental entity charged with administering the state's workers' compensation system and as successor in interest to the trusts, asserting causes of action for breach of fiduciary duty, breach of contract, aiding and abetting breach of fiduciary duty, fraud and unjust

enrichment. Basically, plaintiff alleged that SGRisk manipulated the trusts' future claims liabilities and UHY purposely portrayed the trusts' financial conditions in a more favorable light for CRM's financial benefit. UHY and SGRisk each moved pre-answer to dismiss the complaint. Supreme Court partially granted the motions (38 Misc 3d 1229[A], 2013 NY Slip Op 50338[U] [2013]). Plaintiff appeals and UHY and SGRisk each cross-appeal.

Supreme Court partially erred in granting the portion of UHY's motion to dismiss plaintiff's breach of contract cause of action. A breach of contract cause of action generally must be commenced within six years of the breach (*see* CPLR 203 [a]; 213 [2]; *Town of Oyster Bay v Lizza Indus., Inc.*, 22 NY3d 1024, 1030 [2013]), but where a plaintiff seeks "to recover damages for malpractice, other than medical, dental or podiatric malpractice," the cause of action must be commenced within three years "regardless of whether the underlying theory is based in contract or tort" (CPLR 214 [6]; *see Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.]*, 3 NY3d 538, 541 [2004]; *City of Binghamton v Hawk Eng'g P.C.*, 85 AD3d 1417, 1418 [2011], *lv denied* 17 NY3d 713 [2011]). "In the context of a malpractice action against an accountant, the claim accrues upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice" (*Ackerman v Price Waterhouse*, 84 NY2d 535, 541 [1994] [citations omitted]; *see Mitschele v Schultz*, 36 AD3d 249, 252 [2006]). Plaintiff alleged that UHY breached its agreements with CRM, which contracts were for the benefit of the trusts, by, among other things, "failing to originate, follow, and/or consistently apply generally accepted accounting [principles] and generally accept[ed] auditing standards in its analysis of the [t]rusts' reserve liabilities and financial conditions," "failing or refusing to offer an accurate analysis of the [t]rusts' financial conditions," and "failing or refusing to identify the dangers the [t]rusts' liabilities posed to their solvency." These allegations are couched as breaches of contract, but could be construed as essentially a professional malpractice claim to the extent that the allegations are that UHY failed to perform its contractual services in a professional, nonnegligent manner (*see City of Binghamton v Hawk Eng'g P.C.*, 85 AD3d at 1418; *Boslow Family Ltd. Partnership v Kaplan & Kaplan, PLLC*, 52 AD3d 417, 417 [2008], *lv denied* 11 NY3d 707 [2008]). To the extent that the complaint alleges negligent performance of professional duties, the three-year statute of limitations applies to plaintiff's breach of contract cause of action against UHY (*see Matter of R.M. Kliment &*

*Frances Halsband, Architects [McKinsey & Co., Inc.]*, 3 NY3d at 543). As the complaint states that UHY prepared its last audited financial statements for each trust in 2006 or 2007, and the action was commenced in July 2011, that aspect of the breach of contract cause of action is time-barred (*see id.*; *City of Binghamton v Hawk Eng'g P.C.*, 85 AD3d at 1418; *RGH Liquidating Trust v Deloitte & Touche LLP*, 47 AD3d 516, 517 [2008], *lv dismissed* 11 NY3d 804 [2008]).

On the other hand, to the extent that plaintiff alleged that UHY breached the contracts through intentional actions, such as by "refusing" to perform certain obligatory functions, these allegations are not in essence a malpractice claim. Professional malpractice "is but a species of negligence" (*Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 787 [1996]; *see Scott v Uljanov*, 74 NY2d 673, 674 [1989]; *Dries v Gregor*, 72 AD2d 231, 235 [1980]; *see also Simcuski v Saeli*, 44 NY2d 442, 453-454 [1978]), and, thus, does not generally encompass intentional acts. Accordingly, the portion of the complaint alleging breach of contract through intentional conduct is subject to a six-year statute of limitations (*see* CPLR 213 [2]), rendering the intentional portion of that cause of action timely.

Supreme Court did not err in converting a portion of plaintiff's unjust enrichment cause of action into a breach of contract cause of action and denying UHY's motion to dismiss as relates to that portion. The court dismissed as untimely that part of the unjust enrichment cause of action that challenged the competency of the professional services rendered, dismissed the remainder of that claim because there is an enforceable contract between the trusts and UHY, and converted the allegation that UHY did not perform some of the required services into part of plaintiff's breach of contract cause of action. The only portion of the unjust enrichment cause of action at issue on appeal is the last portion. Plaintiff alleged that UHY was retained by CRM to perform accounting services on behalf of the trusts, was paid from the trusts' funds for performing services for the trusts' benefit, and that UHY "did not perform some of the services for which it was paid," resulting in damages to the trusts. Accepting these allegations as true and affording plaintiff the benefit of every reasonable inference (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]), Supreme Court properly determined that plaintiff stated a cause of action for breach of contract (*see Torok v Moore's Flatwork & Founds., LLC*, 106 AD3d 1421, 1422 [2013]; *Clearmont Prop., LLC v Eisner*, 58 AD3d 1052, 1055 [2009]), and properly converted that portion of the unjust enrichment claim into a

breach of contract claim. These allegations do not address negligence in the performance of professional services, akin to malpractice, but allege a pure breach of contract through an utter failure to perform part of the agreed-upon and paid-for services. Thus, they are timely under the six-year statute of limitations (*see* CPLR 213 [2]).

Regarding the fraud cause of action against UHY, plaintiff has not challenged Supreme Court's determination to dismiss the portion alleging fraudulent misrepresentation of the trusts' financial conditions in the annual audit reports, on the basis that such actions are not independent from any professional malpractice. That leaves only the portion of the fraud claim alleging that UHY fraudulently misrepresented to the trusts that it would "accurately identify, and accurately disclose any changes in, the [t]rusts' financial statuses, including the danger of incurring operating deficits." Because these allegations are essentially duplicative of the allegations that UHY intentionally breached the contracts, they do not give rise to a separate fraud cause of action and must be dismissed (*see Kosowsky v Willard Mtn., Inc.*, 90 AD3d 1127, 1129 [2011]).

Supreme Court did not err in partially denying SGRisk's motion as it sought to dismiss the breach of fiduciary duty cause of action. Actuaries are not considered professionals for the purpose of the shortened statute of limitations applicable to malpractice claims (*see Health Acquisition Corp. v Program Risk Mgt., Inc.*, 105 AD3d 1001, 1004 [2013]; *Castle Oil Corp. v Thompson Pension Empl. Plans*, 299 AD2d 513, 514 [2002]). Despite not being deemed professionals in that context, actuaries can still develop relationships of trust and confidence sufficient to give rise to a fiduciary duty. Courts must conduct a fact-specific inquiry to determine whether a fiduciary relationship exists based on confidence on one side and "resulting superiority and influence on the other" (*AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d 146, 158 [2008] [internal quotation marks and citation omitted]; *see Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue*, 11 NY3d 15, 21 [2008]). Plaintiff alleged that SGRisk "held itself out as being a skilled and competent actuarial" firm that "adhered to accepted professional standards," that it rendered services for the trusts' benefit, provided advice and created "a relationship of trust and confidence between" itself and the trusts. Plaintiff also alleged that SGRisk agreed to exercise "good faith and undivided loyalty" when determining appropriate valuation *of the trusts'* future claims liability and the trusts reasonably *relied on this*,

placing confidence in SGRisk that it would accurately produce truthful annual actuarial reports with correct estimates of future claims reserves.* Additionally, plaintiff alleged that SGRisk breached the duty by knowingly and consistently underestimating the claims liabilities and necessary reserves and failing to identify dangerous underfunding, causing nearly $557 million in damages. Letters submitted by SGRisk are not sufficient documentary evidence to mandate dismissal (*see* CPLR 3211 [a] [1]), as they do not "utterly refute[ ] plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *accord Mason v First Cent. Natl. Life Ins. Co. of N.Y.*, 86 AD3d 854, 855 [2011]; *see Health Acquisition Corp. v Program Risk Mgt., Inc.*, 105 AD3d at 1004). Under the applicable standard, plaintiff adequately stated a cause of action for breach of fiduciary duty (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d at 19; *ARB Upstate Communications LLC v R.J. Reuter, L.L.C.*, 93 AD3d 929, 931 [2012]; *compare AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d at 158).

Plaintiff stated a breach of contract cause of action against SGRisk. The elements of that cause of action are formation of a contract, performance by one party, failure to perform by another, and resulting damage (*see Torok v Moore's Flatwork & Founds., LLC*, 106 AD3d at 1422). CRM entered into contracts with SGRisk for the benefit of the trusts, and the trusts are intended third-party beneficiaries of those contracts (*see Health Acquisition Corp. v Program Risk Mgt., Inc.*, 105 AD3d at 1003; *Saratoga Schenectady Gastroenterology Assoc., P.C. v Bette & Cring, LLC*, 83 AD3d 1256, 1257 [2011]). Plaintiff alleged that the trusts paid for actuarial services, but SGRisk breached by "fail[ing] to perform the agreed-upon services" of applying actuarial standards, offering an accurate analysis of future claims liabilities and identifying dangers to the trusts' future solvency based on the future claims liabilities, causing damages. We reject SGRisk's argument that these allegations amount to mere common-law negligence, subject to a three-year statute of limitations; plaintiff has adequately alleged a breach of contract—subject to a six-year statute of limitations (*see* CPLR 213 [2]), which has not yet run—and has not asserted a tort

---

* We reject SGRisk's argument that an actuary cannot be a fiduciary here because the workers' compensation regulations require actuarial reports "certified by an independent qualified actuary" (12 NYCRR 317.19 [a] [3]). While a court or jury can consider that requirement of independence when determining whether a fiduciary relationship exists, we cannot say that the regulation precludes a finding of such a relationship as a matter of law.

claim, which must be based on a violation of a legal duty independent of the contract (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]; *Rothberg v Reichelt*, 270 AD2d 760, 762-763 [2000]; *Fort Ann Cent. School Dist. v Hogan*, 206 AD2d 723, 724-725 [1994]).

Plaintiff adequately pleaded a fraud cause of action against SGRisk. The complaint alleges that SGRisk manipulated the actuarial reports and knowingly made false representations about the financial status of the trusts and their future claims liabilities, and these representations were made to induce prospective members to join the trusts due to low member contribution rates and the perception that the trusts were financially stable. Plaintiff further alleged that the trusts relied on these representations, which led to their insolvency, resulting in over $557 million in damages. These allegations are specific enough to satisfy the pleading requirement of CPLR 3016 (b), which is intended to "inform a defendant with respect to the incidents complained of" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 491 [2008]; *see Sargiss v Magarelli*, 12 NY3d 527, 530-531 [2009]). The disclaimers in the actuarial reports do not conclusively create a defense. Those disclaimers state that projecting losses and future "liabilities is an inexact process," so there is "no guarantee." While this may have alerted the trusts that the projections may not be accurate, SGRisk represented that the inaccuracy was attributable to the "inexact process," not to intentional manipulation of figures so as to make the trusts artificially appear financially stable. Notwithstanding the disclaimer, the projections, allegedly known to be false when made, could be construed as statements of fact rather than mere opinion so as to support the fraud claim (*see CPC Intl. v McKesson Corp.*, 70 NY2d 268, 286 [1987]; *East 32nd St. Assoc. v Jones Lang Wootton USA*, 191 AD2d 68, 71 [1993]).

The cause of action for aiding and abetting breach of fiduciary duty is premised on SGRisk's knowledge of the fiduciary duties owed by CRM and UHY to the trusts, and allegations that SGRisk intentionally continued to underestimate the trusts' future claims liabilities with the knowledge that this would aid and abet breaches of fiduciary duty by CRM and UHY. Because the allegations of fraud perpetrated by SGRisk are essential to this claim, a six-year statute of limitations pursuant to CPLR 213 (8) is applicable (*see IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 139 [2009]; *Paolucci v Mauro*, 74 AD3d 1517, 1519-1520 [2010]), rendering the claim timely.

As SGRisk did not raise the issue of plaintiff's standing in its initial moving papers, but instead waited to address this new

argument in reply papers, the issue was not properly before Supreme Court and was waived (*see* CPLR 3211 [e]; *see also Dougherty v City of Rye*, 63 NY2d 989, 991-992 [1984]; *Matter of Albany County Dept. of Social Servs. v Rossi*, 62 AD3d 1049, 1050 [2009]).

Lahtinen, J.P., Stein and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as (1) granted that portion of defendant UHY, LLP's motion to dismiss the breach of contract cause of action based on allegations of intentional conduct, and (2) denied that portion of said motion to dismiss the fraud cause of action; motion denied to the extent in (1) and granted to the extent in (2); and, as so modified, affirmed.